IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF TEXAS HOUSTON DIVISION

| | |
|---|---|
| EDWARD LEE SCARBROUGH AND § <br> CHERYL B. SLAID-SCARBROUGH § <br> § <br> *Plaintiffs* § <br> § <br> § <br> § <br> § <br> JPMORGAN CHASE BANK, NA, § <br> § <br> *Defendants* § | CIVIL ACTION NO. 4:21-CV-03760 |

### PLAINTIFFS' MOTION FOR CONTINUANCE UNDER FRCP 56(D)
### AND
### PLAINTIFFS' MOTION FOR STATUS CONFERENCE

Plaintiffs, Edward Lee Scarbrough and Cheryl B. Slaid-Scarbrough ("Plaintiffs") file: 1. this Motion for Continuance under FRCP 56(d) and 2. this Motion for Status Conference.

**I.   INTRODUCTION**

The central issue in this case has been—and continues to be—whether JPMorgan Chase Bank ("Chase Bank") sold or traded Plaintiffs' two private bills of exchange into the financial markets and received value for them.  That is why the Court ordered Chase Bank to provide an affidavit addressing that very issue—whether it did or did not sell or trade the instruments into the financial markets and receive value for them.  Unfortunately, Chase Bank provided the Court only a conclusory Declaration from Alicia Hernandez that opined, without any foundation or support, that it did not.  The Court therefore ordered Chase Bank to present Ms. Hernandez for deposition as well as a corporate representative to testify to several topics surrounding Chase Bank's receipt

1

and the disposition of the private bills of exchange.[1]

Although Chase Bank did present Ms. Hernandez and a 30(b)(6) corporate representative (Pamela Bingham) for depositions, neither had any personal knowledge or credible information to offer about the disposition of the private bills of exchange by Chase Bank. They could only offer speculation about the private bills of exchange and what Chase Bank did with them.[2]

Chase Bank is playing the same expensive games of evasion and stonewalling as in its briefing and with the Declaration of Ms. Hernandez. Chase Bank has failed to comply with the Court's rulings at the March 1, 2023, and March 23, 2023, hearings regarding the depositions and the scope of this initial phase of discovery. Worse, counsel for Plaintiffs discovered in Ms. Bingham's deposition that Chase Bank has spoliated critical evidence directly relevant to the disposition of the private bills of exchange. Finally, Chase Bank has ignored the Court's instructions at the last hearing to "reconvene" with the Court after the two Chase Bank depositions occur and *before* filing any dispositive motions.

> The Court: ". . . then we're going to do these two depositions with Miss Hernandez and the 30(b)(6). And then we'll reconvene. And you'll each tell me what your position is before we file–before–before you all file, before JPMorgan files their motion, we'll all meet." (Dkt. No. 76, 31:18–23).

---

[1] The topics the Court approved for the deposition of the Chase Bank corporate representative are:
- All actions taken by Chase Bank regarding Plaintiffs' Private Bills of Exchange.
- The chain of custody and protocol that Chase Bank followed regarding Plaintiffs' Private Bills of Exchange.
- The identity of all persons who worked for Chase Bank who received, handled, processed, examined, packaged, traded, sold, or otherwise disposed of Plaintiffs' Private Bills of Exchange.
- The value (or lack thereof) that Chase Bank received for Plaintiffs' Private Bills of Exchange.
- The documents or records that Chase Bank has that reference Plaintiff's Private Bills of Exchange or that relate to the actions that Chase Bank took regarding Plaintiff's Private Bills of Exchange.
- All communications that Chase Bank had with third parties (including agents, brokers, or financial institutions) about Plaintiffs' Private Bills of Exchange.
- The information (whether in documents or by oral communications) that Alicia Herandez received in order to be able to execute the Declaration provided to the Court.

*See* Parties Joint Submission for Discovery (Dkt. No. 63); Transcript from March 23, 2023, Hearing (Dkt. No. 79).

[2] Their only basis for their conclusions and opinions was certain correspondence the legal department had prepared asserting the bills had no value, and they each presume (without any support) that the bills therefore were not traded. (Ex. 1, 37:21–38:19, 40:18–24, 54:6–55:8, 99:22–100:4; Ex. 2, 27:16–25, 32:10–33:12).

2

Specifically, at the last hearing on March 23, 2023, the Court made several rulings on Plaintiffs' proposed discovery requests to establish a narrow scope for the initial phase of discovery against Chase Bank. The Court deferred Chase Bank's obligation to respond to Plaintiffs' interrogatories and requests for admission but specifically told the parties that Chase Bank would "only [need to] respond if [Plaintiffs] don't get a – we'll have another hearing if [Plaintiffs] don't believe it was adequately addressed at the depo." (Dkt. No. 79, 5:15–18). The Court was clear that it intended for the parties to "tell [him] what [their] position is [on the sufficiency of the discovery] before . . . JPMorgan files their motion." (Dkt. No. 76, 31:21–23).

Plaintiffs conducted the depositions of Pamela Bingham, Chase Bank's 30(b)(6) witness, on August 9, 2023 (*Exhibit 1*) and of Alicia Hernandez on August 15, 2023 (*Exhibit 2*). On September 8, 2023, contrary to the Court's directive to have a status conference, Chase Bank filed a Motion for Summary Judgment.[3] (Dkt. No. 81). The Court's request for the parties to reconvene to explain to the Court their respective positions after the depositions has not occurred. This motion therefore seeks to postpone the Court's consideration of Chase Bank's motion for summary judgment until after it holds a status conference to determine whether Plaintiffs are entitled to additional discovery from Chase Bank for its failure to provide witnesses with any substantive knowledge of the central issue in the case. Indeed, the Court's decision to hold a status conference prior to Chase Bank's filing any more dispositive motions proves prescient in light of the Chase Bank witnesses' complete lack of personal knowledge or credible information to address the court-approved topics.

---

[3] Plaintiffs are aware that the Court's First Amended Scheduling and Docket Control Order from April 27, 2023 (Dkt. No. 75), placed a September 29, 2023, deadline on filing dispositive motions prior to proceeding into Discovery Phase II. Plaintiffs do not challenge Chase's filing of the Motion for Summary Judgment within the Court's timeline; however Plaintiffs do not believe Chase has provided discovery sufficient to the Court's requirement. That is why Plaintiffs move for a continuance and a status conference hearing prior to the Court ruling on Chase's motion.

In March, the Court understood the Plaintiffs' frustration that Chase Bank provided nothing of value in Ms. Hernandez's declaration. Nothing has changed. When ordering the two Chase Bank depositions, the Court also imposed a pause on Chase Bank's dispositive motions until it had an opportunity to hear from the parties following the limited discovery. Despite the two depositions, this case has not moved forward since February, notwithstanding the Plaintiffs' and the Court's attempts. As the Court requested in March, the parties should again meet with the Court about the status of discovery and the Plaintiffs' continued need for the discovery of evidence on the central issue in the case before it considers any dispositive motion.

## II.  NATURE AND STAGE OF PROCEEDINGS

On July 29, 2022, Plaintiffs filed their Second Amended Complaint with affidavits and other exhibits. (Dkt. No. 39). On August 22, 2022, Plaintiffs served a set of Requests for Production and a set of Requests for Admissions on Chase Bank. On August 22, 2022, Chase Bank filed its Motion to Dismiss Plaintiffs' Second Amended Complaint. (Dkt. No. 46). On August 25, Plaintiffs served a set of Interrogatories on Chase Bank. On September 12, 2022, Plaintiffs filed a Response to Chase Bank's Motion to Dismiss Plaintiffs' Second Amended Complaint. (Dkt. No. 49). On September 21, 2022, Chase Bank responded to Plaintiffs' Requests for Admissions and Requests for Production, objecting to all of them.

On December 8, 2022, the Court held a hearing on Chase Bank's Amended Motion to Dismiss and ordered Chase Bank to provide a Sur-Reply and Affidavit that states whether it took "either of the two Private Bills of Exchange and then packaged them with other negotiable instruments and traded or [sold] them into the financial markets." (Dkt. No. 54). On December 28, 20922, Chase Bank filed its Sur-Reply and a Declaration of Alicia Hernandez. (Dkt. No. 55). On January 19, 2023, the Court entered a minute entry order giving the parties notice that it will treat Defendant's motion to dismiss (Dkt. No. 46) as a motion for summary judgment and

4

therefore, it will consider all evidence presented. (Dkt. No. 56).

After a hearing on February 13, 2023, the Court denied Chase Bank's Motion to Dismiss (Dkt. No. 46) without prejudice to allow the Plaintiffs to conduct limited discovery related to assertions made by Chase Bank in Alicia Hernandez's Declaration. (Dkt. No. 61). On March 1, 2023, the Court held a status conference on discovery and indicated that after the Plaintiffs conduct the depositions of Ms. Hernandez and the 30(b)(6) corporate representative witness, the parties would reconvene before either party files a dispositive motion. (Dkt. No. 76, 31:21–23). In a minute entry order following the status conference, the Court required the parties to file a joint discovery plan by March 8, 2023. (Dkt. No. 63).

On March 3, 2023, Chase Bank filed an Answer to Plaintiffs' Second Amended Complaint. (Dkt. No. 66). The Court dismissed Defendant McCarthy & Holthus, LLP on March 6, 2023, following Plaintiffs' notice of dismissal. (Dkt. No. 67). Chase Bank filed the parties' Joint Submission Regarding Plaintiffs' Proposed Discovery During Initial Discovery Phase on March 8, 2023. (Dkt. No. 68).

On March 23, 2023, the Court held a hearing on the proposed discovery to define the scope of Plaintiffs' deposition topics; and the Court delayed Chase Bank's responses to interrogatories and requests for admissions until it determines if Plaintiffs believe the depositions adequately addressed those areas covered by the written discovery. (Dkt. No. 73; Dkt. No. 79). On motion from Chase Bank on April 27, 2023 (Dkt. No. 74), the Court issued the First Amended Scheduling Order setting a deadline for filing dispositive motions following the initial phase of Plaintiffs' discovery of September 29, 2023. (Dkt. No. 75). Plaintiffs deposed Ms. Bingham on August 9, 2023, and Ms. Hernandez on August 15, 2023. On September 8, 2023, Chase Bank filed a Motion for Summary Judgment. (Dkt. No. 81).

### III. THE COURT SHOULD GRANT A CONTINUANCE UNDER FRCP 56(D) OF THE DISPOSITION DATE OF THE MOTION FOR SUMMARY JUDGMENT UNTIL PLAINTIFFS CAN HAVE DISCOVERY.

#### 1) *A Continuance is necessary because Chase Bank did not produce witnesses with knowledge of the private bills of exchange.*

When a party "cannot adequately defend against summary judgment, a Rule 56(d) motion for continuance is his remedy." *Moore v. Burlington N. Santa Fe Ry. Co.*, No. 21-20103, 2022 WL 16860550 at *3 (5th Cir. 2022). The Rule provides "nonmovants with a much-needed tool to keep open the doors of discovery in order to adequately combat a summary judgment motion." *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992). A court should grant motions for continuance relating to motions for summary judgment "as a matter of course" provided the nonmovant has "diligently pursued discovery of the evidence." *Id.* at 919 n. 4 (quoting *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir.1991)).

The Supreme Court has cautioned against premature summary judgments. The Fifth Circuit recognizes that a nonmovant's response to a motion for summary judgment comes with qualifications: Rule 56(d) provides the court discretion that "summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Int'l Shortstop*, 939 F.2d at 1267 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5 (1986)).

#### 2) *Requirements for Rule 56(d) continuance.*

The Fifth Circuit has three general requirements for a continuance of discovery. The nonmovant must: (1) request extended discovery prior to the court's ruling on summary judgment, (2) put the court on notice that the party is seeking further discovery pertinent to the summary judgment motion, and (3) demonstrate to the court how the requested discovery pertains to the pending motion. *Wichita Falls Off. Assocs.*, 978 F.2d at 919. Continuances are "broadly favored

6

and should be liberally granted." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006).

3) ***Plaintiffs satisfy the requirements of Rule 56(d).***

Plaintiffs would prefer to respond to Chase Bank's motion for summary judgment instead of filing these motions, but they cannot. The complaints Plaintiffs lodged with the Court in the *Sur-Response and Motion for Continuance under FRCP 56(d)* still stand. (Dkt. No. 58).

a. ***Chase Bank did not provide Ms. Hernandez's Declaration in good faith.***

In place of Ms. Hernandez's uninformative declaration (Dkt. No. 55), Chase Bank produced Ms. Hernandez for an uninformative deposition. The only noteworthy testimony that Ms. Hernandez could provide to her declaration was to confirm that she had nothing to do with Plaintiffs' private bills of exchange and could not even say from her review of documents what had happened to them. (*Ex. 2*, 27:6–19). This testimony therefore demonstrates that Chase Bank did not comply in good faith with the Courts' original Order for Chase Bank to produce an affidavit that attests that Chase Bank did or did not trade the Plaintiffs' private bills of exchange into the financial markets for value.

b. ***Chase Bank's 30(b)(6) witness did not "appear" for all intents and purposes.***

Chase Bank appointed Pamela Bingham as its 30(b)(6) witness to provide testimony on behalf of the company on the topics in the deposition notice and in response to the Court's Order. As with Alicia Hernandez and the Court-ordered Declaration, Chase Bank intentionally chose a witness with no knowledge of the private bills of exchange or what happened to them. Instead of a witness knowledgeable about relevant facts,[4] they chose Pamela Bingham. Ms. Bingham, a "Mediation Corporate Representative," assists Chase Bank legal by attending mediations and

---

[4] A 30(b)(6) witness is one "knowledgeable about relevant facts." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006).

giving depositions on behalf of the Bank. (Ex. 1, 5:6, 7:22–8:12). She has been in the role for a decade and could not provide an exact number of depositions she has given. (Ex. 1, 4:23–5:10). She graduated from high school but does not have any formal financial or legal training. (Ex 1., 8:11–12, 18:22–20:10). She proved non-responsive to the most basic questions and repeated the same "mantra" that the Chase Bank legal department had given her to recite.[5]

Ms. Bingham did not ever see the Plaintiffs' private bills of exchange. (Ex. 1, 138:22–24). She spoke to no one at Chase Bank who had. (Ex. 1, 59:24–60:20). Ms. Bingham did not conduct her own investigation as to what happened to the private bills of exchange or even interview people in the Bank. (Ex. 1, 59:3–11, 129:2–4). She did not have knowledge of any Chase Bank investigation into the matter and saw no need for one. (Ex. 1, 62:4–63:4). Ms. Bingham's testimony as to whether Chase Bank destroyed the private bills of exchange rested on pure presumption. (Ex. 1, 73:6–20). When pressed on her opinion that Chase Bank had destroyed the private bills of exchange, she could not refer to a supporting document or a statement from an individual familiar with their destruction. (Ex. 1, 99:6–21). She relied on internal documents as conclusory evidence that because Chase Bank regarded the private bills of exchange as invalid forms of payment, they could not have been bundled and traded into the financial markets. (Ex. 1, 99:22–101:1). She had no personal knowledge of the Legal Papers Served ("LPS") Department—where Chase Bank sent the private bills of exchange after receipt—nor had she spoken to anyone in the LPS Department or associated with the process of holding documents received for 90 days and then destroying them. (Ex. 1, 46:17–51:4).

Ms. Bingham only reviewed the documents the legal department asked her to review and

---

[5] Ms. Bingham repeatedly answered questions with the Chase Bank assertion that the private bills of exchange had no value, were invalid, or had been destroyed, even when the question was not related to those subjects. (*See, e.g.*, Ex. 1, 40:5–41:1; 44:22–45:7; 54:6–17; 88:20–89:5, 89:17–24, 90:1–7, 106:22–107:5, 109:4–19).

8

does not know if there are other documents that pertain to the private bills of exchange. (Ex 1., 58:6–19). All her statements and opinions on behalf of Chase Bank are based upon her review and inferences from those documents. (*Id.*) Her testimony was therefore based upon pure speculation and presumption from the documents the legal department chose to give her and simply parrots what legal opined about the bills in a few of those documents. (Ex. 1, 73:6–20, 88:12–89:13).

Chase Bank did not fulfill its obligation to "*prepare* [Ms. Bingham] in order that [she could] answer fully, completely, unevasively [sic], the questions posed . . . as to the relevant subject matters." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). When a corporation designates a witness under FRCP 30(b)(6) who "is not knowledgeable about relevant facts" then the corporation has not appeared. *Id.* at 433–34. Because Ms. Bingham "is not knowledgeable about relevant facts" relating to what happened to the private bills of exchange, her "appearance is, for all practical purposes, no appearance at all." *Id.* (cleaned up). Chase Bank had an obligation to "prepare [Ms. Bingham] to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Id.* at 433. Because Ms. Bingham lacked knowledge about the private bills of exchange and whether Chase Bank had traded or destroyed them, she has proven deficient. Because it is obvious Ms. Bingham has proven deficient, Chase Bank "is obligated to provide a substitute." *Id.*

    c. ***Plaintiffs' discovery requests approved by the Court remain unsatisfied by Chase Bank.***

The facts are no clearer now than when this Court granted Plaintiffs' request for limited discovery. (Dkt. No. 61). In the previous motion for 56(d) continuance, Plaintiffs asked the Court:

> How can the witness say definitively that Chase did not sell or trade the private bills of exchange or get value for them when she does not attest that she ever saw them, handled them, processed them, has personal knowledge of them, or reviewed a

9

document that refers to them? She does not deny that Chase received the private bills of exchange or explain what Chase did with them or how they got from Chase into the financial markets. The declaration is therefore not trustworthy on its face. Chase has repeatedly stated that it is not able to state what it did with private bills of exchange at issue, and this declaration still does not answer that question. The declaration contains only bald and unsupported conclusions and opinions that it did not sell or trade the instruments for value.

(Dkt. No. 58 at 3). Though the questions posed above related entirely to Ms. Hernandez's declaration, they equally apply now to both her and Ms. Bingham's depositions.

Plaintiffs request the same discovery as identified on the record by the Court on March 21, 2023.[6] (Dkt. No. 73; Dkt. No. 79 (transcript)). The Court identified these topics in the parties' Joint Submission. (Dkt. No. 63). First, Plaintiffs still seek discovery on "all actions taken by Chase Bank regarding plaintiffs' private bills of exchange." (Dkt. No. 79, 2:21–23; Dkt. No. 63 at 4–5). As seen below, Chase Bank has still not produced a document or an individual that can testify directly as to the chain of custody or any terminal actions Chase Bank took with the private bills of exchange, either regarding their destruction or their being traded into financial markets.[7]

Second, Plaintiffs still seek discovery as to "the chain of custody and protocol that Chase Bank followed regarding claimants' private bills of exchange." (Dkt. No. 79, 3:1–3, Dkt. No. 63 at 6). Ms. Hernandez could not determine the chain of custody from her review of Chase Bank's documents.

```
10:14  16         Q.  I'm sorry.  So you weren't able to determine
10:14  17    kind of the chain of custody from your review of those
10:14  18    documents?
10:14  19         A.  Correct.
```

---

[6] Plaintiffs are satisfied with Miss Hernandez's answers regarding item #7 on the request list: "information whether documents or by – that Alicia received and ordered, be able to execute the declaration." (Dkt. No. 79, 3:15–19). However, plaintiffs do not believe the information upon which Miss Hernandez relied provides sufficient supports for the assertions contained within her declaration.

[7] Without personal knowledge to that effect, Miss Bingham denied on Chase's behalf that the private bills of exchange were traded into the market. (Ex. 1, 41:5–10).

(Ex. 2, 27:16–19). Ms. Bingham could only identify that Chase Bank received the private bills of exchange in New York but not who took custody of them, and that they were later sent to the LPS Department, but not by whom. (Ex. 1, 42:8–21). She identified the LPS Department employees who received the private bills of exchange and who scanned them in. (Ex. 1. 43:4–8; 49:7–20; 96:18–98:9). Beyond that, Ms. Bingham based answers on presumption.

```
01:26 10        Q.   So do we -- are you able to tell me what
01:26 11   happened to those originals of the private bills of
01:26 12   exchange?
01:26 13        A.   The original documents were received into Legal
01:26 14   Papers Served as we saw by the stamp, and they were
01:26 15   stored there securely until they were destroyed after 90
01:27 16   days.
01:27 17        Q.   And again, are you presuming that based upon
01:27 18   just the lack of any notation from the line of business
01:27 19   saying, "retain it"?
01:27 20        A.   Corrected.  The documents that we reviewed,
```

(Ex. 1, 50:3–51:4). Further, Ms. Bingham could not point to a single document or a conversation with a single individual confirming that this process actually occurred regarding the two private bills of exchange.

```
01:28 10        Q.   (BY MR. SULLIVAN)  Has anyone told you they
01:28 11   destroyed them?
01:28 12        A.   No, as I stated earlier, I haven't spoken with
01:28 13   anyone.
01:28 14             MR. SULLIVAN:  Objection; nonresponsive.
01:28 15        Q.   (BY MR. SULLIVAN)  Has anyone told you they
01:28 16   destroyed them?
01:28 17        A.   No.
```

11

```
01:28 18         Q.   Have you seen any document that says
01:28 19    explicitly, expressly they were destroyed?
01:28 20         A.   I -- not a document that I can recall at the
01:28 21    moment in --
```

(Ex. 1, 99:10–21). Miss Bingham could not testify to having reviewed a document that showed the bills of exchange were destroyed because *those documents* have been destroyed. (Ex. 1, 64:17–65:11).

```
11:35 17         Q.   Well, do you have any records that you reviewed
11:35 18    that say either way, that they say that, "we didn't
11:35 19    request it, so you can destroy them"?  Is there any --
11:35 20    did you review any record that speaks to that at all?
11:35 21         A.   Well, the destruction log that was maintained
11:35 22    by Legal Papers Served are kept on file for a period of
11:36 23    two years.  So records were kept regarding the documents
11:36 24    that were received for any particular date.
11:36 25              However, those documents are no longer

11:36  1    available because it has been more than the two year
11:36  2    period that that would have had existed.
11:36  3         Q.   Okay.

11:36  6         Q.   (BY MR. SULLIVAN)  My question, though, is of
11:36  7    all the documents you reviewed, there is no document
11:36  8    that tells us that the documents were either destroyed
11:36  9    or not destroyed?
11:36 10         A.   Outside of my answer that I've already given
11:36 11    that they weren't requested by a line of business, no.
```

Third, Plaintiffs still seek discovery on "the identify of persons who work for Chase" who "received, handled, processed, examined, packaged, traded, sold, or otherwise disposed of Plaintiff's Private Bills of Exchange." (Dkt. No. 70, 3:4–6; Dkt. No. 63 at 6). Chase Bank Legal

provided Ms. Bingham a list of names—it was marked as Exhibit 6 in the deposition—but the list did not completely represent the people involved with the private bills of exchange.

```
12:34 10          Q.   (BY MR. SULLIVAN)   How come the people in
12:34 11   Exhibit 7 are not on the list of persons, except for
12:34 12   Mr. Gambrell?   And let me see here -- yeah.   Do you know
12:34 13   why a lot of these people that I asked you about on
12:34 14   Exhibit 7 are not listed on Exhibit 6?
12:34 15          A.   I wouldn't know anything other than the timing.
12:34 16          Q.   Who's the head of the Legal Papers Served
12:34 17   office?   So, you know, like, who would be managing the
12:34 18   department?
12:34 19          A.   I don't know the manager of the department.
12:35 20          Q.   You -- so you didn't look into that?
12:35 21          A.   I did not.
```

(Ex. 1, 92:10–21). Miss Hernandez was not provided any such list; she was not familiar with any of the names, nor had she spoken to anyone on the list. (Ex. 2, 30:9–16).

Fourth, Plaintiffs still seek discovery on the "value (or lack thereof) that Chase Bank received for Plaintiffs' Private Bills of Exchange." (Dkt. No. 79, 3:7–8; Dkt. No. 63 at 6). Ms. Hernandez attributes Chase Bank's assertion that the private bills of exchange have no value, and are not legal tender, entirely to the letters Chase Bank provided the Scarbroughs and the lack of a credit on the Scarbrough's accounts. (Ex. 2, 30:17–32:9). Ms. Bingham echoed the same sentiments. (Ex. 1, 73:21–38:24). Regarding any value Chase Bank might have received upon trading the private bills of exchange into the marketplace, Ms. Bingham's answers relied on the assumption that because the Chase Bank documents assigned no value to the bills of exchange, they must not have been traded at all.

```
12:31  1         Q.   (BY MR. SULLIVAN)  Are you aware, yes or no, of
12:31  2    Chase doing a search in the financial markets using the
12:31  3    CUSIP or the instrument number for the two private bills
12:31  4    of exchange to see if they're out in the marketplace?
12:31  5              THE WITNESS:  No, because the documents
12:31  6    were not sold, were not -- no action was taken because
12:31  7    they had no value.
```

(Ex. 1, 90:1–9).

Fifth, Plaintiffs still seek discovery on "documents or records that Chase Bank has that reference Plaintiffs' Private Bills of Exchange or that relate to the actions that Chase Bank took regarding Plaintiff's Private Bills of Exchange" including "communications Chase Bank had with third parties." (Dkt. No. 79, 3:9–14; Dkt. No. 63 at 6–7). Chase Bank has not provided documents showing that it traded the private bills of exchange into the market, or that Chase Bank destroyed the private bills of exchange. Miss Bingham assumed no communication occurred with third parties because Chase Bank did not assign value to them.

```
02:10  5         A.   Yeah, there was no communication with any
02:10  6    third-parties because Chase never determined -- or never
02:10  7    found those documents to be negotiable.
02:10  8         Q.   And you're just basing that on what you
02:10  9    reviewed in the way of the production?
02:10 10         A.   I'm basing that on the fact that we're in the
02:10 11    documents that we have produced, correct, with the
02:10 12    decision from the executive office that the documents
02:10 13    were invalid.
02:10 14         Q.   But again, you didn't -- you didn't call people
02:10 15    up and say, "Hey, did you ever talk to people about the
02:10 16    private bills of exchange"?
02:10 17         A.   As we discussed, I only spoken with counsel.
```

(Ex. 1, 128:5–17).

Finally, regarding requests for admissions or interrogatories, the Court instructed Chase Bank that they "do not need to respond to these until after the depo, and they'll only respond if you [Plaintiffs' counsel] don't get a – we'll have another hearing if you don't believe it was adequately addressed at the depo." (Dkt. No. 79, 5:15–18). The Court instructed the parties that the Court would "revisit those issues after the depos." (Dkt. No. 79, 2:12–13). Plaintiffs believe their position is clear on the continued need for Chase Bank to respond to Plaintiffs' requests for admissions and interrogatories based on the dearth of documentary and testimonial support provided by Chase Bank's two witnesses.

   4) *Chase Bank's failure to preserve evidence may constitute spoliation.*

Importantly, the case would be much further down the road if Chase Bank had not *spoliated* critical evidence. Without any credible support, Ms. Bingham concludes that the private bills of exchange were destroyed by the LPS Department after 90 days because she does not see any evidence in the Chase Bank documents that she reviewed that someone at Chase Bank asked the LPS Department not to destroy them. (Ex. 1, 98:10–20). She testified that it was the normal course of Chase Bank business to destroy all documents received by the LPS Department within 90 days if no other Chase Bank department requests that they be preserved. (Ex. 1, 50:3–51:4). She then admits that had they been destroyed the LPS Department would have listed the private bills of exchange on the "Destruction Log", but the Destruction Log was destroyed in the ordinary course of business two years later.

```
6       Q.  (BY MR. SULLIVAN)  Okay.  And when you
7    testified earlier that the two bills of exchange got
8    destroyed, is that based only upon your knowledge of how
9    it generally works with documents received in Legal
```

15

```
10   Papers Served?  If they're not preserved -- if they are
11   not specifically preserved by the handling attorney or
12   representative, then they get destroyed after 90 days?
13        A.  Correct.  And based on the business records in
14   this case, a line of business did not request that those
15   original documents be sent to them.  So the documents
16   would have been destroyed after 90 days.
17        Q.  Well, do you have any records that you reviewed
18   that say either way, that they say that, "we didn't
19   request it, so you can destroy them"?  Is there any --
20   did you review any record that speaks to that at all?
21        A.  Well, the destruction log that was maintained
22   by Legal Papers Served are kept on file for a period of
23   two years.  So records were kept regarding the documents
24   that were received for any particular date.
25            However, those documents are no longer
```

```
1    available because it has been more than the two year
2    period that that would have had existed.
```

(Ex. 1, 64:6–65:2).

Yet, Plaintiffs had already filed litigation (in a separate action) against Chase Bank on these same private bills of exchange in 2019,[8] so Chase Bank was under a duty to suspend any destruction policy and preserve the evidence pursuant to a litigation hold. *Coastal Bridge Co.,*

---

[8] The Scarbroughs first filed litigation in the 434th District Court in Fort Bend County on June 13, 2019 (No. 19-DCV-263426). Chase Bank removed its portion of the action to federal court (No. 4:20-cv-01002). Judge Hughes dismissed without prejudice on April 7, 2020, pursuant to the parties' joint stipulation.
 Overlapping a portion of the first litigation, the Scarbroughs filed for Chapter 13 Bankruptcy on July 2, 2019. (No. 4:19-bk-33748). Chase Bank filed a notice of appearance in the proceedings on July 9, 2019. The bankruptcy proceedings closed on December 24, 2019.
 The current action before the Court was filed in the 434th District Court in Fort Bend County on November 01, 2021, (No. 21-DCV-288585). Chase Bank removed to this Court on November 17, 2021. (Dkt. No. 1).

*L.L.C. v. Heatec, Inc.*, 833 F. App'x 565 (5th Cir. 2020) (describing spoliation as "the destruction of evidence in pending or reasonably foreseeable litigation"). Based on Ms. Bingham's version of Chase Bank's normal operating timeline regarding documents sent to the LPS Department, the timeline of Chase Bank's handling of the private bills of exchange overlaps litigation[9]:

- LSP Department received, digitized, and put in storage—February 4, 2019. (Ex. 1, 97:19–24)

- Held for 90 days—February 4–May 5, 2019. (Ex. 1, 50:3–11).

- Destroyed and registered in a Destruction Log—May 5, 2019. (Ex. 1, 50:3–11).

- Destruction Log destroyed—May 5, 2021. (Ex. 6, 64:21–65:2).

Chase Bank therefore destroyed the only evidence that could have told the litigants and this Court whether the private bills of exchange were actually destroyed as Chase Bank now contends. A Party to litigation may not benefit from the intentional destruction of key evidence; instead, a presumption is drawn that the evidence would have been unfavorable to the defendant had it not destroyed the evidence. *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 963 (S.D. Tex. 2010) (holding that a party failing their duty to preserve evidence may incur sanctions which include the court assuming facts against that party); *see also Coastal Bridge*, 833 F. App'x at 572 (allowing sanctions or adverse inference upon a showing of bad faith or bad conduct).

Plaintiffs do not now file a motion for spoliation. At the moment, Plaintiffs seek to highlight for the Court the obstacles Chase Bank has created for the Plaintiffs and the Court in reaching the truth in this matter.

## IV. CONCLUSION

Despite Plaintiffs' diligent pursuit to discover the evidence on the central issues in the case,

---

[9] All dates are hypothetical based on Chase Bank's timeline except the February 4, 2019, receipt.

Chase Bank refuses to cooperate. *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 n. 4 (5th Cir. 1992). Chase Bank has provided a declaration unsupported by documentation or personal knowledge of the witness. After the Court permitted depositions to clarify the declaration, the witnesses could not provide credible testimony or support. The witnesses' assertions are still conclusory and based upon speculation. Therefore, a continuance under Rule 56(d) provides the Plaintiffs "with a much-needed tool to keep open the doors of discovery in order to adequately combat [Chase Bank's] summary judgment motion." *Id.* at 919.

Plaintiffs therefore respectfully request that the Court:

a. Set a status conference to assess the status of Phase I discovery and whether 1. Chase has complied with the Court's Orders and its duty to respond fully and fairly to discovery; 2. Plaintiffs are entitled to receive responses to its interrogatories and requests for admissions and to take additional depositions from Chase Bank;

b. Continue its consideration of Chase Bank's motion for Summary Judgment until thirty (30) days after Chase Bank has fully and fairly responded to Plaintiffs' written discovery and has provided additional witness(es) and documentation to address the central issue in the case of what it did with Plaintiffs' private bills of exchange; and,

c. Grant Plaintiffs such other and further relief to which they may be entitled.

Dated: October 2, 2023.

                Respectfully submitted,

                /s/ *John F. Sullivan III*
                John F. Sullivan III
                Texas Bar No. 19485010
                S.D. Bar No. 9761
                The Law Office of John F. Sullivan, PLLC
                1306 Bobbitt Manor Lane
                Houston, Texas 77055
                281-302-9363 Telephone
                john@sullivanlawiii.com

                ATTORNEY FOR PLAINTIFFS

## **CERTIFICATE OF CONFERENCE**

    I certify that I called and left detailed messages for Ms. Kendall Yow and then for Mr. Lance Lewis regarding Plaintiffs' motion for a status conference and their need for additional discovery before responding Chase Bank's motion for summary judgment, and as of the time of the filing of the motion had not received a response with Chase Bank's position to the motion.

                /s/ *John F. Sullivan III*
                Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

    I certify that a true and correct copy of this document was electronically filed with the Court and served through the CM/ECF system, or by email, to all counsel of record registered to receive a Notice of Electronic Filing for this case on the 2nd day of October 2023.

                /s/ *John F. Sullivan III*
                Attorney for Plaintiffs