IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDWARD LEE SCARBROUGH AND<br>CHERYL B. SLAID-SCARBROUGH<br><br>*Plaintiffs*<br><br>v.<br><br>JPMorgan Chase Bank, NA,<br><br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:21-CV-03760 |

**PLAINTIFFS' MOTION FOR RULE 56(D) CONTINUANCE AND
RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Edward Lee Scarbrough and Cheryl B. Slaid-Scarbrough ("Plaintiffs") file this renewed[1] Motion for Rule 56(D) Continuance and Response to Defendants' Motion for Summary Judgment.

I.  INTRODUCTION

The primary issue in this case has been and continues to be whether Defendant JPMorgan Chase Bank, N.A. ("Chase Bank") sold or traded Plaintiffs' private bills of exchange into the marketplace. Though the Court denied Plaintiffs' recent Rule 56(d) motion, Plaintiffs bring a new Rule 56(d) motion—not to prejudice or cause additional expense to Chase Bank—which the Court expressed as a concern—but rather to properly address the primary issue in this case. Plaintiffs have recently engaged[2] an unbiased and qualified expert—R. Don Keysser, Ph. D.—who is performing his due diligence and investigating the financial markets to determine whether

---

[1] Based upon new grounds.
[2] Plaintiffs signed the engagement agreement to retain Dr. Keysser on January 2, 2024.

1

Plaintiffs' private bills of exchange are trading or have traded. Dr. Keysser should complete his inquiry and initial investigation by February 14, 2024.

Without developed evidence, summary judgment occurs prematurely. As Plaintiffs have insisted, Chase Bank has balked at providing the evidence via limited discovery as this Court has instructed. Chase Bank has never taken these claims—or the Court's instructions—seriously, as demonstrated by the incompetent 30(b)(6) witness and the uninformed declarant provided by Chase Bank. After farcical adherence to the Court's instructions providing Plaintiffs the opportunity to conduct limited discovery, Chase Bank attempts to win the case through summary judgment. Plaintiffs, however, have not had a fair opportunity to discover contradictory evidence.

Plaintiffs ask the Court to delay consideration of Chase Bank's motion until Dr. Keysser has completed his investigation. Additionally, Plaintiffs request that the Court deny Chase Bank's motion for summary judgment because of the existence of genuine disputes of material fact. In the alternative, Plaintiffs urges the Court to delay considering Chase Bank's motion for summary judgment until Plaintiffs have had the full and fair opportunity at the limited discovery allowed by this Court.

## II. PLAINTIFFS CANNOT ADEQUATELY DEFEND AGAINST SUMMARY JUDGMENT

A Rule 56(d) motion for continuance provides the proper remedy when a party "cannot adequately defend against summary judgment." *Moore v. Burlington N. Santa Fe Ry. Co.*, No. 21-20103, 2022 WL 16860550 at *3 (5th Cir. 2022). A motion for continuance under this rule becomes appropriate when the nonmoving party shows "how the additional discovery will defeat the summary judgment motion" by creating a genuine dispute of material fact. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir.1991). When the nonmovant under motion for summary judgment has "diligently pursued discovery of the evidence," the Court should grant a motion for continuance "as a matter of course." *Id.*

The Fifth Circuit has three general requirements for a continuance of discovery. The nonmovant must: (1) request extended discovery prior to the court's ruling on summary judgment,

(2) put the court on notice that the party is seeking further discovery pertinent to the summary judgment motion, and (3) demonstrate to the court how the requested discovery pertains to the pending motion. *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992).

At this stage, Plaintiffs do not request this additional time to seek more information from Chase Bank given the Court's recently expressed concerns.[3] Plaintiffs only ask the Court for the time needed by Plaintiffs' engaged expert to investigate the financial markets. After delays relating to the holidays and securing payment, Dr. Keysser began his work on January 9, 2024. Plaintiffs have instructed Dr. Keysser to focus on the singular issue of whether Plaintiffs' private bills of exchange are in the financial marketplace.

The investigation will potentially provide Plaintiffs with evidence to controvert Chase Bank's motion for summary judgment. Either Dr. Keysser will discover that the private bills of exchange have traded in the marketplace, or he will not be able to determine that from the information available to him.

Dr. Keysser is an extremely qualified expert witness with strong credentials in the relevant field with no bias toward or against any party or counsel.[4] Dr. Keysser has over forty years as an investment banker and business finance consultant. For over twenty-five years, Dr. Keysser was a FINRA licensed investment banker with Series 63, 7, 79, and 27 licenses and is currently in the process of relicensing. Dr. Keysser has familiarity with the issues in dispute, both in his experience as an investment banker and as a Professor of Finance at Carlson School of Management, University of Minnesota and at Saint Mary's University. He has served as an expert witness nearly fifty times and has testified at trial and in administrative hearings.[5]

Plaintiffs ask the Court to delay consideration of Chase Bank's motion until February 14, 2024, by which time Dr. Keysser will have completed his investigation.

---

[3] See Dkt. 88, 26:7–12.
[4] See Declaration of John F. Sullivan, attached as *Exhibit 1*.
[5] See Keysser C.V., attached as *Exhibit 1-A*.

3

### III. RESPONSE TO CHASE BANK'S MOTION FOR SUMMARY JUDGMENT

#### A. Legal Standard

Summary judgment is not proper when, viewing the evidence in the light most favorable to Plaintiffs as nonmovant, a genuine dispute exists as to material facts. Fed. R. Civ. P. 56(a); *see Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)). All reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022).

#### B. Summary Judgment is not appropriate when Plaintiffs lack a fair opportunity at discovery.

Plaintiffs cannot defend against the motion for summary judgment due to a lack of fair opportunity at discovery. Neither witness provided by Chase Bank satisfied the Court's instructions requiring Chase Bank to allow Plaintiffs to conduct limited discovery. By providing a 30(b)(6) witness who lacked knowledge of relevant facts, Chase Bank essentially did not appear for the required deposition. *See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433–34 (5th Cir. 2006) (holding that a 30(b)(6) witness without knowledge of relevant facts constitutes a failure to appear and requires a substitute witness). Despite Plaintiffs objections to the incompetence of the witnesses, the Court, in its discretion, denied the motion.

But Plaintiffs previously met the Rule 56(d) burden by "set[ting] forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist." *Kean v. Jack Henry & Assocs., Inc.*, 577 Fed. App'x 342, 348 (5th Cir. 2014) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)). Plaintiffs sought documents or testimony that would provide definitive evidence whether the bills of exchange were actually destroyed or

4

not. Conclusory statements made by Chase Bank's 30(b)(6) witness should not be the standard by which the Court disposes this case.[6] "Business as usual" should not suffice to establish that the documents were in fact destroyed. The evidence previously sought pertained to whether Chase Bank did or did not actually destroy the bills of exchange and would "influence the outcome of the pending summary judgment motion." *Kean*, 577 Fed. App'x at 348 (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)).

The above complaint is further evidenced by Chase Bank's use of those conclusory statements in their motion for summary judgment. Chase Bank relies on surmise that the private bills of exchange were destroyed.[7] Chase Bank's 30(b)(6) witness could point to no direct evidence definitely showing that Chase Bank had destroyed the bills, relying on a negative—"no request to preserve the paper originals was made"—in support.[8] But when pressed on the issue, the 30(b)(6) witness indicated she had not reviewed documents that indicated Chase Bank had destroyed the private bills of exchange because Chase Bank had destroyed the sole piece of evidence (the "destruction logs") that could answer the question.[9]

Chase Bank's spoliation of evidence further prevents Plaintiffs from registering a proper response to the motion for summary judgment. Chase Bank had control of the private bills of exchange and the destruction logs and had an obligation to preserve them at their independent times of destruction. A party is under a duty to preserve when that party has notice that particular evidence is relevant to impending litigation. *See Rimkus Consulting Grp., Inc. v. Cammarata*, 688

---

6 *See* Dkt. No. 81, at 7 ("Ms. Bingham testified that . . .the original paper copy was destroyed in accordance with Chase's business as usual ninety-day original document retention policy.").

7 Dkt. 81, at 11 ("Because Chase concluded Plaintiffs' correspondence, including the Bills of Exchange, were merely an attempt to dispute the debt and not valid negotiable instruments, no request to preserve the paper originals was made and the Bills of Exchange were destroyed approximately ninety days after Chase received them.").

8 *Id. But see* Bingham Depo., Dkt. 82, ex. 1, 99:6–21 (demonstrating an inability to indicate documentary evidence supporting the conclusion that Chase Bank had destroyed the bills of exchange).

9 Bingham Depo., Dkt. 82, ex. 1, 64:6–65:2 (admitting that the evidence to demonstrate that Chase Bank had destroyed the bills of exchange had itself been destroyed by Chase Bank).

F. Supp. 2d 598, 613 (S.D. Tex. 2010). As of March 19, 2019, Chase Bank had notice of the Scarbrough's intent to file suit if Chase Bank did not credit the private bills of exchange against their account.[10] Based upon the ninety-day destruction timeline provided by Chase Bank,[11] the physical copies of the bills of exchange would have still existed within Chase Bank's Legal Papers Served department. The earliest destruction could have occurred under this timeline would be ninety days from February 4, 2019.[12] Ninety days from receipt would be May 4, 2019. Chase Bank had notice it was under an obligation to preserve the bills of exchange beginning March 19, 2019, more than six weeks before Chase Bank alleges it destroyed the bills of exchange.

Chase Bank had notice of Plaintiff's legal theory and notice that the bills of exchange were relevant evidence in a dispute originating in that theory. In the March 19 letter, Plaintiffs accused Chase Bank of having invested at least one of the bills of exchange into the financial marketplace.[13] Plain as day, Chase Bank had notice of the relevance behind the bills of exchange and had a duty to preserve them, which it failed to perform.

Further, the obligation to preserve evidence did not disappear upon termination of the previous suit. That suit did not end because the parties came to an understanding regarding the Plaintiffs' mortgage; termination occurred as a result of the COVID-19 emergency. The dispute still existed, and Chase Bank was still under a duty to preserve. Additionally, Chase Bank should have known that upon resuming foreclosures at the end of the COVID-19 emergency, the lawsuit would resume. *See id.* ("Generally, the duty to preserve arises when a party '"has notice that the evidence is relevant to litigation or . . . *should have known that the evidence may be relevant to future litigation*."'" (emphasis added) (citations omitted)) (collecting cases). The bills of exchange

---

[10] Scarbrough Letter to Chase Bank ("Failure to release said lien and to then initiate foreclosure proceedings after April 16, 2019, will result in a suit against your bank."). Attached as Exhibit 2.
[11] Bingham Depo., Dkt. 82, ex. 1, 50:3–11 (describing that the private bills of exchange would have been "stored in a secured area within the mail room at Legal Papers Served for a period of approximately 90 days" before being destroyed).
[12] *Id.*, 97:13–23 (identifying Legal Papers Served receipt of the bills of exchange).
[13] *See* Scarbrough Letter to Chase Bank, ex. 2 ("Further, your office did not return our PBoEs but invested at least one of them with T Rowe Price.")

6

and the destruction logs remained relevant evidence. Chase Bank destroyed them despite being under a duty to preserve. And, as soon as Chase Bank resumed foreclosures, Plaintiffs resumed their previous lawsuit—this lawsuit.

Spoliation of the destruction logs cannot be excused even if it occurred in the ordinary course of business. Because Chase Bank had a duty to preserve the destruction logs, the destruction during the ordinary course of business cannot be classified immediately as only negligence but could in fact be categorized as bad faith. *Van Winkle v. Rogers*, 82 F.4th 370, 377–79 (5th Cir. 2023). In *Van Winkle,* the Fifth Circuit held that destruction of critical evidence in the ordinary course of business did not immediately constitute negligence and created a fact question necessitating resolution by a jury. *Id.* The presence of the fact question regarding bad faith defeated summary judgment because "[i]f a genuine dispute of material fact exists as to bad faith, a jury should make that determination." *Id.* at 378.

The facts here echo *Van Winkle*. Chase Bank destroyed a crucial piece of evidence while under a duty to preserve it and with notice that the logs would be relevant to future litigation. Based on that destruction, Chase Bank cannot definitively show what happened to the physical copies of the private bills of exchange in its possession. The only difference is that the *Van Winkle* defendant could not demonstrate a retention policy related to the evidence, while a sophisticated financial entity like Chase Bank should certainly be aware of its duties to retain evidence related to litigation. *See id*. at 379.

The consideration for the Court is whether Chase Bank's failure to adhere to its instructions regarding limited discovery, Chase Bank's failure to observe the requirements of Rule 30(b)(6), and Chase Bank's destruction of critical evidence all preclude granting its motion for summary judgment. The Court allowed Plaintiffs to conduct limited discovery, and yet through considerable effort and expense, they have only encountered Chase Bank's obstinacy. Plaintiffs urge the Court to consider whether the true opportunity to develop a body of defensive evidence should be the proper foundation on which to entertain Chase Bank's motion.

**C. The Evidence Available to Plaintiffs Demonstrates the Existence of Genuine Dispute of Material Fact.**

*1. A Genuine Dispute Exists as to Whether Chase Bank Traded the Private Bills of Exchange into the Financial Markets.*

Chase Bank relies solely on the declaration of Alicia Hernandez and the deposition of the 30(b)(6) witness Pamela Bingham to declare that Chase Bank did not trade the bills of exchange into the marketplace.[14] Chase Bank, just like its declarant and its 30(b)(6) witness, make conclusory statements not backed by documentary or testimonial evidence.

First, Declarant Alicia Hernandez made conclusory statements Chase Bank now relies on that it did not trade the bills of exchange into the marketplace. Ms. Hernandez could only predicate her determination that Chase Bank did not trade the bills of exchange into the marketplace upon the letters delivered to the Plaintiffs declaring that the bills of exchange had no value.[15] Ms. Hernandez reviewed no documents relating to their chain of custody—she could not say where the bills of exchange went or when.[16]

Without knowing the chain of custody, Ms. Hernandez could not speak truthfully or correctly to whether Chase Bank traded or sold the bills of exchange. Chain of custody provides an understanding of who had the bills of exchange, when, and what they did with them. Without an understanding of chain of custody, Ms. Hernandez's declaration that Chase Bank did not trade or sell the bills of exchange cannot be seen as truthful or correct.

Similarly, Ms. Hernandez determined that Chase Bank received no value from the bills of exchange through the same conclusory means. Ms. Hernandez concluded that because Chase Bank did not believe the bills of exchange to have value, Chase Bank must not have received any value

---

[14] *See* Dkt. 81, at 13, 21–22.
[15] Hernandez Depo., Dkt. 82, ex. 2, 32:10–33:12.
[16] *Id.* 27:6–19.

for them.[17] This type of circular logic has no place in a court's consideration as summary judgment evidence. Further, Ms. Hernandez points to the continued existence of the Plaintiffs' debt on the promissory note and a lack of funds credited to the loan—neither of which speak to whether Chase Bank actually traded or sold the bills of exchange for value.[18] Plaintiffs do not accuse Chase Bank of selling the private bills of exchange and crediting the proceeds against their balance, which is what Ms. Hernandez seems to believe is the case; Plaintiffs allege that Chase Bank sold the bills of exchange and *did not* credit their account.

Second, Chase Bank's 30(b)(6) witness, Pamela Bingham's ("Ms. Bingham"), testimony likewise fails to support Chase Bank's claim that it did not trade the bills of exchange into the marketplace or that it received value for them. Ms. Bingham performs the same leaps of logic, asserting without evidence that because Chase Bank regarded the bills of exchange as invalid and without value, that Chase Bank could not have traded the bills into the marketplace.[19]

Ms. Bingham proved more knowledgeable regarding chain of custody. However, like Ms. Hernandez, she still could not produce conclusive documentary evidence to show that Chase Bank had destroyed the bills of exchange. Ms. Bingham concluded that because no one at Chase Bank had internally requested the documents, they must have been destroyed.[20] She concluded that because Chase Bank's normal course of business required destruction after ninety days, they must have been destroyed.[21] She then admits (or presumes) that Chase Bank also destroyed the destruction log that would have supposedly demonstrated that Plaintiffs bills of exchange had been destroyed.[22]

---

[17] *Id.* 32:10–18.
[18] *Id*. 32:18–21.
[19] Bingham Depo., Dkt. 82, ex. 1, 99:22–100:4 ("Well, yes, the result of the review by the executive office, you know, concluded that the documents were not valid. So, you know, they definitely wouldn't be traded if they weren't even a valid, negotiable instrument to begin with."); *see also, e.g. id.* 40:5–24; 54:14–17; 89:17–24; 90:5–7; 107:1–5.
[20] *Id.* 98:10–20.
[21] *Id.* 50:3–51:4.
[22] *Id.* 64:6–65:2.

This alone creates a fact question appropriate for a jury. Did Chase Bank actually destroy the bills of exchange as Ms. Hernandez and Ms. Bingham have concluded without basis in fact or evidence? Or do the bills of exchange survive and either purposefully or accidentally get bundled into a package of securities that were then sold into the marketplace? The support relied on by Chase Bank assumes that Chase Bank has not, nor could ever, commit an error or a mistake.

Rather, the inference here lands in favor of Plaintiffs. Chase Bank produces no evidence to show that it definitely did not trade or sell the bills of exchange into the marketplace. Chase Bank only shows the Court that it did not believe the bills of exchange to have value and that it relayed that information to the Plaintiffs. Chase Bank has shown the Court that it normally destroys correspondence after ninety days and that it destroys destruction logs after two years. However, none of that information demonstrates to the court that, as a matter of law, a genuine dispute does not exist as to whether Chase Bank traded or sold Plaintiffs' bills of exchange into the marketplace.

Chase Bank has not and cannot produce evidence that supports its assertions sufficient for a grant of summary judgment. Chase Bank cannot produce physical copies of the bills of exchange. Chase Bank cannot produce a document or a witness to testify definitively that it destroyed the bills of exchange. Without either of these, Chase Bank cannot show this court that a genuine dispute does not exist as to what happened to Plaintiffs' bills of exchange.

> 2. ***Because genuine disputes of material fact exist as to whether Chase Bank traded or sold the bills of exchange into the financial markets, Chase Bank's motion for summary judgment must be denied.***

Chase Bank's remaining arguments fail to overcome the requirements for granting summary judgment. A dispute exists as to whether Chase Bank traded or sold Plaintiffs' private bills of exchange into the marketplace—intentionally or not. That creates a creates a material fact as to whether Chase Bank received value for them. According to Ms. Hernandez's deposition testimony, Chase Bank did not apply any credits to Plaintiffs' accounts or reduce Plaintiffs' debt

as a result of value obtained in sale or trade.[23] Chase Bank's argument that Plaintiffs are "entitled to no credit as a result" of any value gained through trade or sale remains in dispute; therefore, a genuine dispute of material fact exists as to all elements of the Breach of Contract claim.

Second, similarly, Chase Bank's argument against Plaintiffs' had and received money claim fails for the presence of a genuine issue of material fact. Because a dispute exists to whether Chase Bank traded or sold the bills of exchange into the marketplace and received value in return, Plaintiffs can sustain the had and received claim under Texas law. The case law cited by Chase Bank does support the general notion that a had and money received claim does not sustain when covered by a valid, express contract.[24] However, Texas law recognizes "certain exceptions relevant here." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (citing *Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 469–70 (Tex. 1998). Texas recognizes that "overpayments under a valid contract may give rise to a claim for restitution or unjust enrichment." *Sw. Elec. Power Co.*, 966 S.W.2d at 469–70 (Tex. 1998) (collecting cases). A had and received money claim falls within the gambit of quasi-contract theory. *See MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808 (Tex. App.—Dallas 2012).

Included within the general dispute whether Chase Bank traded or sold the bills of exchange into the marketplace is how much value Chase Bank received in return. Under Texas law, if Chase Bank received more than Plaintiffs owe on their account, then the had and received money claim sustains. But because a dispute exists as to a trade or sale, a dispute also exists as to the value received by Chase Bank.

Additionally, Plaintiffs contend that the two-year-statute-of-limitations should be tolled during the period between when the Plaintiffs and Chase Bank dismissed the prior case under the Covid-19 emergency and when Chase Bank reinstituted foreclosure proceedings. Had Plaintiffs

---

[23] Hernandez Depo., Dkt. 82, ex. 2, 32:18–21 ("The letter mentions that the debt is still, you know, due and owing. So that would point to it not having any value. And then you just don't see, you know, those funds coming into the loan.")
[24] *See* Dkt. 81, at 35.

understood that Chase Bank would use the Covid-19 emergency as a vehicle to bar one of their claims, Plaintiffs would not have dismissed their prior action.

Third and finally, because a genuine dispute exists regarding the above, a case and controversy remains; therefore, Plaintiffs are still entitled to declaratory relief. After removal from state to federal court, a court considers a claim seeking declaratory relief under the federal Declaratory Judgment Act. *Ortiz v. Citimortgage, Inc.*, 954 F. Supp. 2d 581 (S.D. Tex. 2013); s*ee* 28. U.S.C. §§ 2201, 2202. When a case or controversy exists within a court's jurisdiction, that court retains the discretion to grant the sought declaratory relief. *Id.* (citing § 2201); *see Torch, Inc. v. LeBlanc*, 847 F.2d 193, 194 (5th Cir. 1991). Controversy exists when the alleged facts support the existence of potential, real and immediate, future injury. *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). When a claimant presents a justiciable controversy, the Declaratory Act exists as a vehicle to provide relief. *Lowe v. Ingalls Shipbuilding,* 723 F.2d 1173, 1179 (5th Cir.1984). Accordingly, with the existence of a genuine dispute as to whether and how much value Chase Bank might have received from trading or selling the bills of exchange into the marketplace, a "substantial and continuing' controversy" exists regarding the sought declarations. *Bauer*, 341 F.3d at 358 (5th Cir. 2003) (citations omitted). Because a substantial and continuing controversy remains, summary judgment is improper.

Contrary to Chase Bank's contentions, Plaintiffs do not assert an independent cause of action under the Declaratory Judgment Act.[25] Plaintiffs assert judicially remediable claims for which declaratory relief is also available and appropriate because, though Chase Bank is not currently conducting foreclosure actions, they remain imminent without resolution here. *Id.* (holding that threat of injury must exist in the presence or future). A form of relief exists for this Court to grant based on the underlying claims. *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 626–27 (N.D. Tex. 2011). Because a genuine dispute exists as to those claims, declaratory judgment remains a form of relief available to Plaintiffs. *See id.* (citing *Val–Com*

---

[25] Dkt. 81, at 33.

*Acquisitions Trust v. CitiMortgage, Inc.*, 421 Fed. Appx. 398, 400–01 (5th Cir.2011)).

## IV. CONCLUSION

First, because Plaintiffs have retained an expert to determine if the bills of exchange are trading in the marketplace, Plaintiffs ask the Court to refrain from considering this motion until Dr. Keysser has completed his investigation. Second, and additionally, because Plaintiffs cannot sufficiently defend against this motion for summary judgment based on the incompetent, limited discovery provided by Chase Bank, Plaintiffs ask the Court to delay consideration of this motion until Chase Bank has provided the limited discovery which this Court instructed that it provide. Finally, in the alternative, because an issue of material fact exists as to whether Chase Bank traded or sold the bills of exchange into the marketplace, Plaintiffs ask this Court to deny Chase Bank's motion for summary judgment.

Respectfully submitted,

*/s/ John F. Sullivan III*
John F. Sullivan III
Texas Bar No. 19485010
S.D. Bar No. 9761
The Law Office of John F. Sullivan, PLLC
1306 Bobbitt Manor Lane
Houston, Texas 77055
281-302-9363 Telephone
john@sullivanlawiii.com

ATTORNEY FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of this document was electronically filed with the Court and served through the CM/ECF system to all counsel of record registered to receive a Notice of Electronic Filing for this case on the 15th day of January 2024.

                        /s/ *John F. Sullivan III*
                        Attorney for Plaintiffs